[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2009
THOMAS K. KAHN
CLERK

No. 06-15851

_____

D. C. Docket No. 01-03208-CV-JEM

SINALTRAINAL,
ISIDRO SEGUNDO GIL, The Estate Of,
LUIS EDUARDO GARCIA,
ALVARO GONZALEZ LOPEZ,
JOSE DOMINGO FLORES,
JORGE HUMBERTO LEAL,
JUAN CARLOS GALVIS,
ALVARO GONZALEZ,
JOHN DOE,
as representative of the Estate of Isidro Segundo Gil,
LUIS ADOLFO CARDONA,
JOHN DOE II,

Plaintiffs-Appellants,

versus

COCA-COLA COMPANY, THE,
COCA-COLA DE COLOMBIA, S.A.,
PANAMERICAN BEVERAGES COMPANY, LLC,
PANAMCO, LLC,
PANAMCO INDUSTRAIL DE GASEOSAS, S.A.,
a.k.a. Panamco Columbia, S.A.,
RICHARD I. KIRBY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(August 11, 2009)

Before TJOFLAT, BLACK and COX, Circuit Judges.

BLACK, Circuit Judge:

The main question presented by this appeal is whether Plaintiffs-Appellants

(Plaintiffs) have sufficiently pled factual allegations in their complaints to survive

a motion to dismiss. In four consolidated cases, Plaintiffs, who were trade union

leaders, brought suit under, *inter alia*, the Alien Tort Statute (ATS), 28 U.S.C.

§ 1350,[1] and the Torture Victims Protection Act (TVPA), 28 U.S.C. § 1350 note,

alleging their employers–two bottling companies in Colombia[2]–collaborated with

Colombian paramilitary forces[3] to murder and torture Plaintiffs. Plaintiffs'

---

[1] The statute is also known as the Alien Tort Claims Act (ATCA), *see, e.g.*, *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1151 (11th Cir. 2005), and the Alien Tort Act (ATA), *see, e.g.*, *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005).

[2] The two bottler-employers are Bebidas y Alimentos de Urabá, S.A., and Panamco Colombia, S.A. Also named as defendants along with the bottler-employers are their respective parent companies and owners. Richard Kirby (Bebidas y Alimentos de Urabá's owner) and Panamerican Beverages Company, LLC and Panamco, LLC (Panamco Colombia's owners) were also named as defendants.

[3] In one of the four cases, the *Garcia* case, the alleged conspiracy was with local police officials, rather than paramilitary members.

complaints named a number of defendants, including The Coca-Cola Company (Coca-Cola USA) and its subsidiary, Coca-Cola de Colombia, S.A., (Coca-Cola Colombia). Coca-Cola USA and Coca-Cola Colombia (the Coca-Cola Defendants) were allegedly connected to the Colombian bottlers, and their respective employees, through a series of alter ego and agency relationships.

In two separate opinions the district court found it lacked subject matter jurisdiction over Plaintiffs' ATS and TVPA claims. *See Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) (*Sinaltrainal I*); *In re Sinaltrainal Litig.*, 474 F. Supp. 2d 1273 (S.D. Fla. 2006) (*Sinaltrainal II*). The ATS is discussed in greater detail below, but briefly, it provides district courts with original jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The TVPA establishes a cause of action for victims of torture and extrajudicial killing "under actual or apparent authority, or color of law, of any foreign nation." 28 U.S.C. § 1350 note § 2(a). We address whether the four complaints sufficiently allege a violation of the law of nations under the ATS, and torture and extrajudicial killing under color of law under the TVPA, to survive a motion to dismiss. For the reasons stated below, we affirm the district court.

# I. BACKGROUND

Plaintiffs initially filed a single complaint against the Coca-Cola Defendants, Bebidas y Alimentos de Urabá, S.A., Richard Kirby, Panamco Colombia, S.A., Panamerican Beverages Company, LLC, and Panamco, LLC (collectively, Defendants). The complaint alleged the systematic intimidation, kidnapping, detention, torture, and murder of Colombian trade unionists at the hands of paramilitary forces, who allegedly worked as agents of the Defendants. Defendants jointly moved to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs then amended their complaint by filing four separate complaints, which became the *Gil* case, the *Galvis* case, the *Leal* case, and the *Garcia* case.[4] Bottler Bebidas y Alimentos de Urabá and its owner, Richard Kirby (the Bebidas Defendants), were named in the *Gil* complaint, whereas bottler Panamco Colombia and its owners, Panamerican Beverages Company, LLC and Panamco, LLC (the Panamco Defendants), were named in the three other complaints: *Galvis*, *Leal*, and *Garcia*. None of the Defendants are alleged to be directly liable for the murder and torture alleged in the complaints;

---

[4] The original case number was 01-CIV-3208. The *Gil* case was assigned this number, while the other complaints were assigned the following case numbers: 02-CIV-20258, 02-CIV-20259, and 02-CIV-20260. Because these cases were factually related, they were consolidated for pretrial purposes and the *Gil* case was designated as the lead case. *See Sinaltrainal II*, 474 F. Supp. 2d at 1276 & n.8.

rather, according to the *Gil*, *Galvis*, and *Leal* plaintiffs, the tortious conduct allegedly committed by paramilitary members is imputed to Defendants through conspiracy, agency, and aiding and abetting theories.[5] The *Garcia* plaintiffs allege Defendants are vicariously liable for tortious conduct allegedly committed by the local police.

Brought by the estate of Isidro Segundo Gil, among others, the *Gil* complaint alleges the Bebidas Defendants and the Coca-Cola Defendants hired, contracted with, or otherwise directed paramilitary security forces that murdered, tortured, or silenced leaders of the trade union representing workers at the Bebidas bottling facility. Isidro Segundo Gil, a local union leader, was allegedly murdered by paramilitaries inside the Bebidas bottling plant. Plaintiff Luis Adolfo Cardona, another union leader, allegedly witnessed Gil's murder and was later detained and tortured by the paramilitaries. Events in the *Gil* complaint took place at the Bebidas bottling facility, while the events in the three other complaints took place in three separate bottling facilities operated by Panamco Colombia.

---

[5] A claim for state-sponsored torture under either the ATS or the TVPA may be predicated on indirect liability or direct liability. *Aldana*, 416 F.3d at 1247-48. The ATS permits conspiracy and accomplice liability, and the TVPA permits aiding and abetting liability. *Id.*; *see also Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1315 (11th Cir. 2008) ("[T]he law of this Circuit permits a plaintiff to plead a theory of aiding and abetting liability under the Alien Tort Statute and the Torture Act.").

The three other complaints name the Panamco Defendants and the Coca-Cola Defendants. In *Galvis*, the plaintiffs allege local management of the Panamco Colombia facility in Barancabermeja where Juan Carlos Galvis worked conspired with leaders of the local paramilitary to rid the facility of the union. Galvis alleges he received a number of death threats from the paramilitaries for his union activities and while driving in his car, on one occasion, was shot at by a gunman. In *Leal*, plaintiffs allege local management of the Panamco Colombia facility in Cucuta where Jorge Humberto Leal worked conspired with leaders of the local paramilitaries to rid the bottling facility of the union. Leal alleges he was kidnapped, tortured, and threatened by the local paramilitaries for his union activities. In *Garcia*, unlike *Gil*, *Galvis*, and *Leal*, the plaintiffs allege a conspiracy between the local police, rather than paramilitary officers, and the bottling facilities' management. The *Garcia* plaintiffs allege the chief of security for the Bucaramanga facility where plaintiffs worked conspired with local police officers to unlawfully arrest, detain, and imprison plaintiffs.

Plaintiffs attempt to connect the Coca-Cola Defendants to the local facilities' management through a series of agency and alter ego relationships. For example, in the *Gil* case, the plaintiffs' layered theory of agency and alter ego liability is as follows: the bottling facility, Bebidas, is responsible for the acts of

6

its employees, including conspiring with local paramilitaries to rid the facility of unions. Bebidas, in turn, is an alter ego or agent of Richard Kirby, Bebidas' owner and manager, such that Kirby is liable for any wrongful conduct by Bebidas employees that resulted in the murder of Gil. Bebidas and Kirby, in turn, are the alter egos or agents of Coca-Cola Colombia because Coca-Cola Colombia is responsible for manufacturing and distributing Coca-Cola products to Bebidas and all other bottlers in Colombia. Coca-Cola Colombia, a wholly-owned subsidiary of Coca-Cola USA, in turn, is an alter ego or agent of Coca-Cola USA because Coca-Cola Colombia is under the management, control, and direction of Coca-Cola USA to the extent that its separateness is illusory.

In *Sinaltrainal I*, the district court held it did not have subject matter jurisdiction over the ATS and TVPA claims against the Coca-Cola Defendants. *See Sinaltrainal I*, 256 F. Supp. 2d at 1355, 1357. The court determined a bottler's agreement, which gave Coca-Cola USA the right to enforce standards necessary to protect Coca-Cola's product in the marketplace, including the use of the trademark, packaging, and quality control, did not give Coca-Cola USA the total control over day-to-day activities that Plaintiffs alleged. It concluded the Coca-Cola Defendants therefore did not have the requisite control to be liable for

the actions of Bebidas or its employees.[6]  The district court then dismissed the

Coca-Cola Defendants for lack of subject matter jurisdiction because the Plaintiffs

failed to sufficiently allege the Coca-Cola Defendants violated the law of nations

by conspiring with the local paramilitary forces to murder Gil and torture Cardona.

*Sinaltrainal I*, 256 F. Supp. 2d at 1354-55.  The district court did not dismiss the

ATS and TVPA claims against the Bebidas Defendants at that time.[7]  *Id*. at 1356,

1360.  Subsequently, in *Sinaltrainal II*, the district court examined in detail the

allegations in each of the four complaints and determined each fell short of

pleading the factual allegations necessary to invoke the court's subject matter

jurisdiction under the ATS and the TVPA.  The district court found the allegations

in all four complaints insufficiently pled a conspiracy between the local facilities'

management and the paramilitary officers.  *Sinaltrainal II*, 474 F. Supp. 2d at

1293-1301.

---

[6] The district court discussed the motion to dismiss for lack of subject matter jurisdiction only as it applied to the *Gil* case, but because the other three cases filed identical motions, it stated the holdings in the order would apply to all four cases.  *Sinaltrainal I*, 256 F. Supp. 2d at 1347 n.1.

[7] Because the district court discussed the motion to dismiss only as it related to the *Gil* case (in which the Panamco Defendants were not named), the Panamco Defendants sought a clarification of the *Sinaltrainal I* order as it related to the remaining cases.  The district court granted the Panamco Defendants' motion for clarification and dismissed the *Galvis* complaint without prejudice.

## II.  STANDARD OF REVIEW

A district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is a question of law we review *de novo*. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1250 (11th Cir. 2007).  A motion to dismiss under Rule 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction.  *See id.* at 1251; *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529.  In a facial attack, on the other hand, the court examines whether the complaint has sufficiently alleged subject matter jurisdiction.  As it does when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the complaint as true.  *McElmurray*, 501 F.3d at 1251 (noting in a Rule 12(b)(1) facial challenge a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised").

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. ---,129 S. Ct.

1937, 1949 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570, 127 S. Ct. 1955, 1968-69, 1974 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that

10

all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S. Ct. at 1964-65 (internal citations and emphasis omitted).

More recently, in *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id*. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

## III. DISCUSSION

### A. Applicable Statutes

#### 1. Alien Tort Statute

The First Congress enacted the ATS as part of the Judiciary Act of 1789. It has received minor amendments since that time[8] and now provides: "The district

---

[8] As it appeared in 1789, the ATS provided federal district courts "shall also have cognizance, concurrent with the courts of the several States, or the circuit courts, as the case may be, of all causes where an alien sues for a tort only in violation of the law of nations or a treaty of

11

courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  Federal subject matter jurisdiction exists for an ATS claim when the following three elements are satisfied: (1) an alien (2) sues for a tort (3) committed in violation of the law of nations.  *See, e.g.*, *Aldana*, 416 F.3d at 1246.

A violation of the law of nations is broadly understood as a violation of the norms of customary international law.  In discussing the norms of customary international law, the Supreme Court has noted the limited category of claims that federal courts could entertain at the time the ATS was enacted were "defined by the law of nations and recognized at common law."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712, 124 S. Ct. 2739, 2754 (2004).  Offenses against the law of nations principally involved the rights or interests of whole states or nations, and did not necessarily involve the private interests of individuals seeking relief in court.  *Id*. at 720, 124 S. Ct. at 2759.  As this Court has previously noted, the law of nations are "[t]he standards by which nations regulate their dealings with one another."

the United States." Act of Sept. 24, 1789, ch. 20, § 9, 1 Stat. 77; *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 712-13, 124 S. Ct. 2739, 2755 (2004).

*Cohen v. Hartman*, 634 F.2d 318, 319 (5th Cir. Unit B Jan. 1981)[9] ("[T]he general consensus is that the law [of nations] deals primarily with the relationship among nations rather than among individuals." (internal quotation marks omitted)); *accord In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 978 F.2d 493, 501-02 (9th Cir. 1992) ("Only individuals who have acted under official authority or under color of such authority may violate international law . . . .").

At the time of the founding of our nation, the violations of the law of nations that were recognized at common law were understood to include (1) violation of safe conducts, (2) offenses against ambassadors, and (3) piracy. *Sosa*, 542 U.S. at 720, 124 S. Ct. at 2759; *see also* 4 W. Blackstone, Commentaries on the Laws of England 68 (1769).[10] The ATS–which provides "[t]he district courts shall have original jurisdiction"–is unquestionably a jurisdictional statute, yet it also has the "practical effect" of entertaining common law causes of action for the "modest number" of violations of the law of nations. *Sosa*, 542 U.S. at 724, 124 S. Ct. at 2761.

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[10] Some commentators have suggested the ATS was enacted "to assure aliens access to federal courts to vindicate any incident which, if mishandled by a state court, might blossom into an international crisis." *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 782 (D.C. Cir. 1984) (Edwards, J., concurring).

The ATS was rarely employed before the 1980s. Indeed, the "modern line of [ATS] cases" began with *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980). *Sosa*, 542 U.S. at 725, 124 S. Ct. at 2761; *see also Abebe-Jira v. Negewo*, 72 F.3d 844, 846 (11th Cir. 1996) (describing *Filártiga* as "[t]he leading case interpreting the Alien Tort Claims Act"). In *Filártiga*, Dr. Joel Filártiga and his daughter, two Paraguayan citizens, brought an action for wrongful death against a Paraguayan police official who allegedly tortured and killed Dr. Filártiga's seventeen-year old son. *Filártiga*, 630 F.2d at 878. The Second Circuit reversed the district court's dismissal for lack of subject matter jurisdiction and held the ATS provided federal jurisdiction for claims involving universally accepted norms of international law. *Id.* The court concluded such universally accepted norms included the right to be free from torture committed by a state official. *Id.* at 880. The court, thus, expanded the ATS beyond the three categories recognized at the founding of the nation.

In *Sosa*, the Supreme Court confirmed the ATS is not only a jurisdictional statute[11]; the ATS also empowers federal courts to entertain "a very limited

---

[11] Federal jurisdiction under the ATS exists only when a defendant's alleged conduct violates "well-established, universally recognized norms of international law," *Filártiga*, 630 F.2d at 888. Allegations of a violation of the law of nations, i.e., an offense of universal concern or conduct under color of law that may be imputed to defendants, is a jurisdictional requirement for the ATS. *See Bigio v. Coca-Cola Co.*, 239 F.3d 440, 447 (2d Cir. 2000) ("[I]f the complaint did not plead a violation of the law of nations by [defendant], the district court was without

14

category" of claims.  *Sosa*, 542 U.S. at 712, 124 S. Ct. at 2754; *see also Aldana*, 416 F.3d at 1246.  Plaintiff Humberto Alvarez-Machain, a Mexican national, brought an action under the ATS against the United States, alleging his abduction from Mexico to stand trial in the United States for a Drug Enforcement Administration agent's torture and murder violated his civil rights.  *Sosa*, 542 U.S. at 698-99, 124 S. Ct. at 2746-47.  In rejecting his ATS claim, the Supreme Court held "a single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support the creation of a federal remedy."  *Id*. at 738, 124 S. Ct. at 2769.  While not recognizing Alvarez-Machain's claim for a violation of the law of nations, the Court did note the limited category of claims federal court could entertain within the law of nations sphere had expanded beyond the original understanding of the First Congress.  Indeed, federal courts have not been precluded from recognizing new claims under the law of nations as an element of the common law, even though the law of nations was originally limited to violation of safe conducts, offenses against

---

subject matter jurisdiction under the Alien Tort Claims Act . . . ."); *Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995) ("[T]he Alien Tort Act requires that plaintiffs plead a 'violation of the law of nations' at the jurisdictional threshold . . . ." (quoting 28 U.S.C. § 1350)); *Filártiga*, 630 F.2d at 887 (noting the ATS requires alleging a violation of the law of nations at the jurisdictional threshold).

15

ambassadors, and piracy. *Id*. at 724-25, 124 S. Ct. at 2761. The Supreme Court cautioned, however, the judicial power to recognize new law of nations violations "should be exercised on the understanding that the door is still ajar subject to *vigilant doorkeeping*." *Id*. at 729, 124 S. Ct. at 2764 (emphasis added).

The modern line of ATS cases initially involved state actors violating the law of nations, but subsequent cases have expanded the scope of the ATS to impose liability on private individuals and corporations. In 1995, the Second Circuit held Radovan Karadzic, self-proclaimed leader of an unrecognized Bosnian-Serb entity, could be liable for a violation of the law of nations for ordering a campaign of murder, rape, forced impregnation, and other forms of torture designed to destroy religious and ethnic groups of Bosnian Muslims and Bosnian Croats. *Kadic v. Karadzic*, 70 F.3d 232, 242 (2d Cir. 1995). Karadzic argued he was not a state actor because he was not an official of any recognized government. The Second Circuit rejected Karadzic's contention and held acts such as genocide and war crimes "violate the law of nations whether undertaken by those acting under the auspices of a state or only as private individuals." *Id.* at 239; *see also id.* at 244. Indeed, torture and summary execution perpetrated in the course of genocide or war crimes have been found actionable absent state action. *See id.* at 243 ("[T]orture and summary execution–when not perpetrated in the

16

course of genocide or war crimes–are proscribed by international law only when committed by state officials or under color of law.").

This Court has also acknowledged private individuals may be liable for a violation of the law of nations. *See Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1316 (11th Cir. 2008) ("Under the Alien Tort Statute, state actors are the main objects of the law of nations, but individuals may be liable, under the law of nations, for some conduct, such as war crimes, regardless of whether they acted under color of law of a foreign nation."). In addition to private individual liability, we have also recognized corporate defendants are subject to liability under the ATS and may be liable for violations of the law of nations. *See id.* at 1315 ("[T]he law of this Circuit is that [ATS] grants jurisdiction from complaints of torture against corporate defendants."); *Aldana*, 416 F.3d at 1242. In *Romero*, the Colombian subsidiary of an Alabama coal mining company was alleged to have paid paramilitary operatives to torture and assassinate leaders of a Colombian trade union representing workers at the Colombian mine. *Romero*, 552 F.3d at 1309. We rejected defendants' argument that corporate defendants were excluded from either the ATS or the TVPA. *Id.* at 1315.

## 2.    *Torture Victim Protection Act*

Enacted in 1992, the TVPA provides a cause of action for official torture and extrajudicial killing.[12]   The TVPA is broader than the ATS in that the TVPA allows citizens, as well as aliens, to seek remedy in federal court for official torture.  S. Rep. No. 102-249, at 5 (1991) ("[W]hile the [ATS] provides a remedy to aliens only, the TVPA . . . extend[s] a civil remedy also to U.S. citizens who may have been tortured abroad."); *see also Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 246-47 (2d Cir. 2003).  By its terms, the TVPA attaches liability to those individuals[13] who have committed torture or extrajudicial killing "under actual or

---

[12] In pertinent part, the TVPA provides:
An individual who, under actual or apparent authority, or color of law, of any foreign nation-
> (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
> (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

Torture Victim Protection Act of 1991 § 2(a), Pub. L. No. 102-256, 106 Stat. 73 (enacted March 12, 1992) (codified at 28 U.S.C. § 1350 (Historical and Statutory Notes)).  The TVPA defines torture as any act (1) "directed against an individual in the offender's custody or physical control[;]" (2) that inflicts "severe pain or suffering[,] . . . whether physical or mental[;]" (3) for the purpose of obtaining information, intimidation, punishment or discrimination. 28 U.S.C. § 1350 note § 3(b)(1).  Extrajudicial killing is defined as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples."  28 U.S.C. § 1350 note § 3(a).

[13] This Court has determined "an individual" to whom liability may attach under the TVPA also includes a corporate defendant.  *See Romero*, 552 F.3d at 1315 ("Under the law of this Circuit, the Torture Act allows suits against corporate defendants.").

18

apparent authority, or color of law, of any foreign nation." To evaluate "actual or apparent authority" and "color of law," this Court has relied on general principles of agency law and 42 U.S.C. § 1983 jurisprudence. *Aldana*, 416 F.3d at 1247; *accord Kadic*, 70 F.3d at 245. To pursue a claim for official torture or extrajudicial killing under the TVPA, the requisite subject matter jurisdiction may be conferred either by the ATS or 28 U.S.C. § 1331. *See Romero*, 552 F.3d at 1315 ("Federal courts are empowered to entertain complaints under the Torture Act when either the Alien Tort Statute or the federal question statute, 28 U.S.C. § 1331, provides jurisdiction.").

This Court, in *Aldana* and *Romero*, squarely considered the state action requirement of the TVPA. In *Aldana*, the plaintiffs alleged Fresh Del Monte Produce, Inc., and its Guatemalan subsidiary hired or established an agency relationship with a private, paramilitary security force to eradicate the local union. *Aldana*, 416 F.3d at 1245. We concluded the state action requirement was satisfied because one public official, a district mayor, was identified by name in the complaint and was alleged to have actively participated in the paramilitary force's armed aggression. *Id*. at 1249 (concluding the complaint could "reasonably be read as depicting the Mayor as an 'armed aggressor,' not a mere observer"). On the other hand, in *Romero*, we determined the state action

19

requirement was not satisfied because the plaintiffs failed to allege the paramilitaries enjoyed a "symbiotic relationship" with the state military for the purpose of the alleged assassinations that formed the basis of the complaint. *Romero*, 552 F.3d at 1303. We concluded "there must be proof of a symbiotic relationship between a private actor and the government that involves the torture or killing alleged in the complaint to satisfy the requirement of state action." *Id*. at 1317; *accord Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) ("[T]he symbiotic relationship must involve the specific conduct of which the plaintiff complains." (internal quotation marks omitted)).

## B. *Plaintiffs' Allegations of Murder and Torture*

Plaintiffs contend Colombia has experienced pervasive civil unrest stemming from a longstanding civil war involving armed leftist groups on one side and the Colombian military, as well as right-wing paramilitaries, on the other. Since 1986, when the largest trade union confederation in Colombia was formed, over 4,000 trade unionists have been murdered. Plaintiffs describe the violent persecution of trade unionists in Colombia as reaching "epidemic proportions" for many years. Plaintiffs also contend they do not have access to an independent or functioning legal system in Colombia, because they suggest the country is not governed by the rule of law. It is against this backdrop that Plaintiffs' claims

20

arise.  Plaintiffs do not allege any defendant caused or precipitated the violence; rather, Defendants are accused of capitalizing on the hostile environment and conspiring with paramilitaries, or the local police in the case of *Garcia*, to rid their respective bottling facilities of unions.

Plaintiffs each brought claims under the ATS and TVPA.[14]  Again, federal subject matter jurisdiction exists for an ATS claim when the following three elements are satisfied: (1) an alien (2) sues for a tort (3) committed in violation of the law of nations.  *Aldana*, 416 F.3d at 1246.  In this case, as in most ATS cases, the only issue is whether Plaintiffs have satisfactorily pled a violation of the law of nations.  *See Kadic*, 70 F.3d at 238 ("There is no federal subject-matter jurisdiction under the Alien Tort Act unless the complaint adequately pleads a violation of the law of nations (or treaty of the United States).").  A TVPA claim requires the following three elements: (1) an individual (2) committed torture or extrajudicial killing (3) under actual or apparent authority, or color of law, of any foreign nation.  28 U.S.C. § 1350 note § 2(a).  Failure to plead any of the elements of a TVPA claim results in a failure to state a claim upon which relief can be granted, *Romero*, 552 F.3d at 1315 ("[D]efects in pleading claims under the

---

[14]  We need not, and specifically do not, decide whether a heightened pleading standard may be used in evaluating the elements of an ATS or TVPA claim.

Torture Act are not jurisdictional defects[, rather t]hese pleading issues involve stating claims on which relief can be granted and should be raised in motions filed under Federal Rule of Civil Procedure 12(b)(6).”), not a lack of subject matter jurisdiction.

ATS claims generally require allegations of state action because the law of nations are the rules of conduct that govern the affairs of a nation, acting in its national capacity, in relations with another nation, *Cohen*, 634 F.2d at 319, whereas TVPA claims, by statutory definition, always require allegations of “actual or apparent authority, or color of law.” *Compare* ATS, 28 U.S.C. § 1350, *with* TVPA, 28 U.S.C. § 1350 note § 2(a); *see also Aldana*, 416 F.3d at 1247 (“State-sponsored torture, unlike torture by private actors, likely violates international law and is therefore actionable under the Alien Tort Act.”).[15]

### 1. Plaintiffs' claims brought under the ATS

For subject matter jurisdiction to entertain Plaintiffs' ATS claims, the complaints must sufficiently plead (1) the paramilitaries were state actors or were sufficiently connected to the Colombian government so they were acting under

---

[15] The ATS and TPVA provide independent actions and neither provides the exclusive remedy for claims of torture, as “a plaintiff may bring distinct claims for torture under each statute.” *Aldana*, 416 F.3d at 1250; *see also Romero*, 552 F.3d at 1316 (“The same is true for extrajudicial killing, which is actionable under the Alien Tort Statute if it is ‘committed in violation of the law of nations,’ 28 U.S.C. § 1350, and under the Torture Act as that Act expressly defines it, [28 U.S.C. § 1350] note § 3(a).”).

22

color of law (or that the war crimes exception to the state action requirement applies)[16] and (2) the Defendants, or their agents, conspired with the state actors, or those acting under color of law, in carrying out the tortious acts. A failure to allege either of these two relationships is fatal to Plaintiffs' ATS claims.

### a. Allegations of state action

In *Gil*, *Galvis*, and *Leal*, paramilitary officers are alleged to have perpetrated murder and torture, which form the basis of their ATS claims. These plaintiffs allege the paramilitary are "permitted to exist" and are "assisted" by the Colombian government. Additionally, the plaintiffs allege "[i]t is universally acknowledged that the regular military and the civil government authorities in Colombia tolerate the paramilitaries, allow them to operate, and often cooperate, protect and/or work in concert with them." These plaintiffs also contend the paramilitaries are state actors who had a symbiotic relationship with the Colombian military and thus operated under color of law.

The plaintiffs' conclusory allegation that the paramilitary security forces acted under color of law is not entitled to be assumed true and is insufficient to allege state-sponsored action. *See Iqbal*, 129 S. Ct. at 1951. Colombia's mere

---

[16] In *Garcia*, which we discuss below, the alleged perpetrators of the torture were the local police. The parties do not dispute that the local police were state actors.

23

"registration and toleration of private security forces does not transform those forces' acts into state acts." *Aldana*, 416 F.3d at 1248. Allegations the Colombian government tolerated and permitted the paramilitary forces to exist are insufficient to plead the paramilitary forces were state actors. The plaintiffs make the naked allegation the paramilitaries were in a symbiotic relationship with the Colombian government and thus were state actors. Nevertheless, in testing the sufficiency of the plaintiff's allegations, we do not credit such conclusory allegations as true. *See Iqbal*, 129 S. Ct. at 1951. We demand allegations of a symbiotic relationship that "involves the torture or killing alleged in the complaint to satisfy the requirement of state action." *Romero*, 552 F.3d at 1317. There is no suggestion the Colombian government was involved in, much less aware of, the murder and torture alleged in the complaints. The plaintiffs' "formulaic recitation," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, that the paramilitary forces were in a symbiotic relationship and were assisted by the Colombian government, absent any factual allegations to support this legal conclusion, is insufficient to state an allegation of state action that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1950.[17]

---

[17] The *Leal* complaint notes Carlos Castano, the founder and leader of the AUC, Colombia's largest paramilitary group, "lives in hiding and he goes to great pains to keep his whereabouts secret, even from the government." It is unclear the extent to which the AUC act

24

Our inquiry does not stop here, however, because, under the ATS, the plaintiffs need not plead state action for claims of torture and murder perpetrated in the course of war crimes. *See Kadic*, 70 F.3d at 242-43 (holding war crimes "committed in the course of hostilities" violated fundamental international law and thus were actionable under the ATS).[18] Some acts, such as torture and murder committed in the course of war crimes, violate the law of nations regardless of whether the perpetrator acted under color of law of a foreign nation or only as a private individual. *Romero*, 552 F.3d at 1316; *Kadic*, 70 F.3d at 239, 243 ("[T]orture and summary execution–when not perpetrated in the course of genocide or war crimes–are proscribed by international law only when committed by state officials or under color of law."). The war crimes exception dispenses with the state action requirement for claims under the ATS.

Having failed to connect the paramilitaries with the Colombian government, the plaintiffs advance a second theory and argue the alleged murder and torture occurred during the course of an armed civil conflict, thereby constituting war crimes that negate the need for state action. The plaintiffs suggest the war crimes

---

under color of law when its founder and leader "goes to great pains" to keep his location concealed from the Colombian government.

[18] On the other hand, torture and murder perpetrated by private actors is actionable under the TVPA only if committed under actual or apparent authority, or color of law. 28 U.S.C. § 1350 note § 2(a). We discuss the TVPA claims in the following section.

25

exception should apply to plaintiffs' murder and torture because, as non-combatants in a civil war, they were targeted for violence to further Defendants' business interests in becoming union-free, and the use of open violence to accomplish this end occurred as a result of a raging civil war.

We conclude the war crimes exception to the state action requirement is not applicable to the plaintiffs because the alleged murder and torture was not committed in the course of a civil war. We reject the plaintiffs' argument that it is sufficient for the purposes of ATS jurisdiction that the violation perpetrated by a non-state actor merely occur during an armed civil conflict. If the war crimes exception to the state action requirement permitted all non-state torture claims occurring during a period of civil disorder, federal courts would be open to lawsuits occurring during any period of civil unrest in a foreign country. The Supreme Court's reminder to exercise "vigilant doorkeeping" persuades us the war crimes exception applies only to claims of non-state torture that were perpetrated in the course of hostilities. *See Sosa*, 542 U.S. at 729, 124 S. Ct. at 2764; *Kadic*, 70 F.3d at 242-43. In this case there is no suggestion the plaintiffs' murder and torture was perpetrated because of the ongoing civil war or in the course of civil war clashes. The civil war provided the background for the unfortunate events

26

that unfolded, but the civil war did not precipitate the violence that befell the plaintiffs.

In sum, the war crimes exception is not applicable to the plaintiffs; thus they must sufficiently allege state action. And as discussed above, the plaintiffs have not sufficiently pled state action. Accordingly, we conclude the district court did not err in dismissing the ATS claims in the *Gil*, *Galvis*, and *Leal* complaints for lack of federal subject matter jurisdiction.

### b. Allegations of conspiracy

In *Garcia*, the complaint alleges a conspiracy between the local police, rather than paramilitary officers, and the bottling facility's management. Plaintiffs Luis Eduardo Garcia, Alvaro Gonzalez, and José Domingo Flores are three members of the local union executive board. In 1995, plaintiffs participated in a 120-hour strike against the Panamco Colombia bottling facility in Bucaramanga, after Panamco reneged on its obligations under a labor agreement with the union. Shortly after the strike, the plaintiffs allege the chief of security for the Bucaramanga facility, José Alejo Aponte, falsely told the local police he found a bomb in the facility, and he accused five members of the local union executive board, including Garcia, Gonzalez, and Flores, of planting the bomb. On March 6, 1996, the police arrested the three men. While in transit to the jail, Flores was

27

repeatedly and brutally beaten by police and was threatened at gun point. As a result of the false charges filed by Aponte, the plaintiffs were incarcerated in a filthy and dangerous Colombian prison for six months. They were released after a regional prosecutor found the charges "to be completely without basis." The plaintiffs allege "Aponte's plan necessarily required the cooperation and complicity of the arresting police officers, since the officers had to be willing to arrest and imprison the union leaders without any evidence of the non-existent bomb." Therefore, "[b]ased on information and belief," the plaintiffs allege Aponte conspired with the arresting police officers to unlawfully arrest, detain, and imprison the plaintiffs.

We reiterate that to state a plausible claim for relief, the plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964. At the same time, however, the complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me." *Iqbal*, 129 S. Ct. at 1949. Furthermore, unwarranted deductions of fact in a complaint are not admitted as

true for the purpose of testing the sufficiency of the allegations. *Aldana*, 416 F.3d at 1248, and the facts as pled must state a claim for relief that is plausible on its face, *see Iqbal*, 129 S. Ct. at 1950.

Here, the *Garcia* plaintiffs' attenuated chain of conspiracy fails to nudge their claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. First, while the plaintiffs allege "Aponte's plan necessarily required the cooperation and complicity of the arresting police officers," we are not required to admit as true this unwarranted deduction of fact. Second, the plaintiffs' allegations of conspiracy are "based on information and belief," and fail to provide any factual content that allows us "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Specifically, these plaintiffs allege "[t]he basis for the conspiracy was either that Aponte arranged to provide payment to the officers for their participation, or that the officers had a shared purpose with Aponte to unlawfully arrest and detain Plaintiffs because they were union officials and had been branded by Panamco officials as leftist guerillas." The premise for the conspiracy is alleged to be either payment of money or a shared ideology. The vague and conclusory nature of these allegations is insufficient to state a claim for relief, and "will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

Furthermore, the complaint fails to allege when or with whom Aponte entered into a conspiracy to arrest, detain, and harm the plaintiffs. The scope of the conspiracy and its participants are undefined. There are no allegations the treatment the plaintiffs received at the hands of the local police and in prison was within the scope of the conspiracy. Additionally, assuming Aponte even conspired with the local police to arrest the plaintiffs, this action alone is insufficient to form the basis of an ATS claim, *see Sosa*, 542 U.S. at 738, 124 S. Ct. at 2769 (holding "a single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support the creation of a federal remedy"), and there is no allegation the subsequent six-month imprisonment and mistreatment was part of the conspiracy. The *Garcia* plaintiffs, thus, fail to state a plausible claim for relief against the Panamco Defendants for a violation of the law of nations. *See* 28 U.S.C. § 1350. We conclude the district court did not err in dismissing the ATS claims in the *Garcia* complaint for lack of subject matter jurisdiction.

*2. Plaintiffs' claims brought under the TVPA*

Plaintiffs allege the same operative facts that gave rise to ATS violations also gave rise to TVPA violations. It is not uncommon for plaintiffs to assert ATS

30

and TVPA claims together. *See, e.g.*, *Romero*, 552 F.3d at 1309 (asserting ATS and TVPA claims based on the same operative facts); *Aldana*, 416 F.3d 1246 (same); *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) (same); *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161 (5th Cir. 1999) (same). The district court determined there was no subject matter jurisdiction for the ATS claims, and because ATS jurisdiction was lacking, the court concluded the TVPA claims also failed for want of subject matter jurisdiction. *Sinaltrainal II*, 474 F. Supp. 2d at 1301 ("Claims for torture may be entertained [under the TVPA] only if they fall within the jurisdiction conferred by the AT[S]."). We conclude the district court erred in dismissing the TVPA claims for want of subject matter jurisdiction because jurisdiction over the TVPA claims is conferred by 28 U.S.C. § 1331 in this case. *See Romero*, 552 F.3d at 1315. Therefore our inquiry is not whether subject matter jurisdiction is lacking, but whether the TVPA claims state a claim for relief.[19] In other words, relief from a complaint that fails to sufficiently

---

[19] Defendants moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction; however, the TVPA claims are properly addressed under a motion to dismiss for failure to state a claim for relief. The failure to state a claim for relief presents a purely legal question. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, . . . always present[] a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." (footnote omitted)). We have discretion to address pure questions of law on appeal, even if such questions are not resolved by the district court. *See Flint Elec. Membership Corp. v. Whitworth*, 68 F.3d 1309, 1314 n.7 (11th Cir. 1995) ("Although the effect of [a recent Eleventh Circuit case] was not resolved in the

31

plead the elements of a TVPA claim should be raised in a motion filed under Rule 12(b)(6), rather than 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96, 118 S. Ct. 1003, 1013 (1998) (explaining "the nonexistence of a cause of action was no proper basis for a jurisdictional dismissal"); *see also Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. May 20, 1981) ("Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.").

To survive a motion to dismiss for failure to state a claim upon which relief can be granted on the TVPA claims, Plaintiffs must sufficiently allege (1) the paramilitaries were state actors or were sufficiently connected to the Colombian government so they were acting under color of law and (2) the Defendants, or their agents, conspired with the state actors, or those acting under color of law, in carrying out the state-sponsored torture. *See* 28 U.S.C. § 1350 note § 2(a).

district court, we have the authority to address this pure question of law on appeal."); *see also Singleton v. Wulff*, 428 U.S. 106, 121, 96 S. Ct. 2868, 2877 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (outlining five general circumstances under which issues may be raised for the first time on appeal).

Plaintiffs failed to do so. As discussed above, the *Gil*, *Galvis*, and *Leal* plaintiffs fail to sufficiently plead the paramilitary forces were acting under color of law. Mere toleration of the paramilitary forces does not transform such forces' acts into state acts, *Aldana*, 416 F.3d at 1248; moreover there are no allegations the Colombian government was aware of, much less complicit in, the murder and torture Plaintiffs allege in their complaints. Additionally, the *Garcia* plaintiffs fail to sufficiently allege the Panamco Defendants, or their agents, conspired with the local police in carrying out the alleged torture. The *Garcia* plaintiffs' vague and conclusory allegations of a conspiracy do not state a claim for relief that is plausible on its face, *see Iqbal*, 129 S. Ct. at 1950, and they fail to detail any factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. We, therefore, vacate the district court's dismissal of the TVPA claims for want of jurisdiction and instruct the court to dismiss the TVPA claims for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

Plaintiffs' complaints outline a litany of unfortunate events occurring in a country that Plaintiffs describe as experiencing ongoing civil unrest and lacking a robust legal system. Nevertheless, as explained above, the *Gil*, *Galvis*, and *Leal*

33

plaintiffs fail to sufficiently plead factual allegations to connect the paramilitary forces, who perpetrated the wrongful acts, with the Colombian government. Furthermore, the *Garcia* plaintiffs fail to sufficiently plead factual allegations to connect the Panamco Defendants to actionable torture. We affirm the dismissal of the ATS claims for lack of subject matter jurisdiction. We vacate the dismissal of the TVPA claims for want of jurisdiction and instruct the district court to enter a dismissal for failure to state a claim upon which relief can be granted.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**