[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2011
JOHN LEY
CLERK

No. 10-15407
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cv-61486-KMM
BKCY No. 09-01382-BKC-RBR

In Re: SETH FREEDMAN,

                                              Debtor.

_____

PHYLLIS ERSHOWSKY,

                                              Plaintiff-Appellee,

                            versus

SETH FREEDMAN,

                                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 26, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Seth Freedman, proceeding *pro se*, appeals from the district court's

dismissal of his appeal from the bankruptcy court's finding that Freedman owes Phyllis Ershowsky a nondischargeable debt, pursuant to 11 U.S.C. § 523(a)(2)(A).[1] He claimed in the district court that § 523(a)(2)(B) requires an allegedly fraudulent misrepresentation to be made in writing, and, thus, his oral representation to Ershowsky was insufficient to support a finding of nondischargeability. He claims here that the district court erred in holding that he had waived this argument by failing to raise it in the bankruptcy court, and in holding that no exception to the waiver doctrine applied. For the reasons set forth below, we affirm.[2]

## I.

Freedman purchased Image Marketing Associates, Inc. ("Image Marketing"), in 2002 for approximately $1 million. Ershowsky was its most important employee in terms of client contact and relationships. As a sign of her importance to the company, the former owners gave Ershowsky $20,000 when

---

[1] Freedman does not challenge the finding that his debt to Ershowsky for an unmatched retirement-account contribution is nondischargeable under § 523(a)(4). *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that issues not raised in the initial brief are abandoned).

[2] Ershowsky has moved for sanctions against Freedman for filing a frivolous appeal, pursuant to Fed.R.App.P. 38. We generally decline to impose Rule 38 sanctions on *pro se* litigants, and this case does not require us to depart from that position. *Woods v. IRS*, 3 F.3d 403, 404 (11th Cir. 1993). Accordingly, Ershowsky's motion is DENIED.

they sold the business and orally promised her another $20,000 if she stayed with the business through the end of 2003. They paid her as promised. In 2004, Ershowsky decided to leave Image Marketing and start her own business. After she gave Freedman one month's notice of her departure, he offered her an immediate $15,000 raise, an annual raise of 10% each year thereafter, additional perks related to vacation time and working remotely, and a share of any profits related to the ultimate sale of the company. He said that he intended to grow the business and sell it within four to five years. He indicated that the business was worth approximately $1 million and that Ershowsky would make $400,000 to $500,000 on the sale of the business. She knew that the original owners had sold Image Marketing to Freedman for $1 million, Freedman did not tell her that the company had any substantial debt, and she was not aware that Freedman had obtained a small-business loan of approximately $600,000 in order to purchase the company.

Approximately six months passed before the one-page profit-sharing agreement, or "Phantom Stock Agreement," was drafted. In the interim, Ershowsky received the $15,000 raise and most of the other perks. In late December 2004, the parties reached a final agreement as to the profit-sharing arrangement, and a final Phantom Stock Agreement was signed in January 2005.

3

Ershowsky also signed an employment contract as part of that transaction. When Ershowsky asked Freedman why the Phantom Stock Agreement included a provision for deducting corporate liabilities, he told her only that he might borrow money in the future in order to grow the company or that he might lend his personal money to the company, and they agreed that such obligations should be paid first. He did not tell her that there were existing, significant obligations.

After completion of the Phantom Stock Agreement, the parties' relationship carried on as normal, but Freedman did not notify Ershowsky when he began to try to sell the company at least as early as June 2005. In mid-2006, he agreed to sell Image Marketing to Crab Key Holdings, LLC ("Crab Key"). Crab Key required Ershowsky to sign a new employment agreement as part of the sale. No one approached Ershowsky about that agreement, and she did not learn of it until after Freedman sold the company. Instead, Freedman forged her signature on the agreement.

The sale closed in July 2006. Ershowsky was out of town at the time and learned of the sale via telephone. This was the first indication she received that the company had been for sale. She asked Freedman how much she would be receiving as a result of the Phantom Stock Agreement, but he told her that the accountant was still working on the details. When she returned to the office, she

found on her desk a redacted copy of the closing statement, a redacted copy of some additional numbers, and a check for $21,956. The redacted version revealed only the ultimate proceeds received after all deductions were paid. Freedman refused to provide an unredacted version of the document. The unredacted version that was filed with the bankruptcy court showed that the business had sold for $945,000 plus the payment of certain closing costs, but that $583,210.02 were used to pay off the small-business and purchase-money loans. The bankruptcy court calculated damages of $166,660 based on the proceeds that would have been available if the debts had not existed, as well as $4,445.16 in unmatched retirement-account contributions and $851.96 in unreimbursed expenses.

After Freedman filed a Chapter 7 petition in the bankruptcy court, Ershowsky filed a complaint alleging that he owed her a nondischargeable debt, pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), on grounds of false pretenses, false representations, actual fraud, and fraud as fiduciary. Freedman answered through counsel, stating as an affirmative defense that Ershowsky had failed to set forth a cause of action upon which relief could be granted. In his written, *pro se* opening statement, Freedman stated that Ershowsky was represented by an attorney during the negotiation of the Phantom Stock Agreement, that she never requested a financial review or attempted to discuss the financial condition of the company,

and that the two of them never discussed the company's financial condition, revenue, gross margins, expenses, or debts. He further stated that he paid her $21,936 upon sale of the company, pursuant to the Phantom Stock Agreement, and that her claim that he represented any specific future financial benefit was completely false and without merit.

During Freedman's cross-examination of Ershowsky at trial, she testified that he told her, "[I]f it's worth about a million dollars now, if you think about it[,] within four or five years, that's 400- or $500,000, and that would give you a comfortable retirement . . . ." She acknowledged that he never provided her with documentation to back up the claim that the company was worth a million dollars, and that they never discussed the value of the company apart from "the alleged representation" at that meeting. Freedman questioned whether she merely "had the million dollar figure in [her] mind prior to that conversation" because she had heard that he bought the company for $1 million, but she responded that she had heard that figure some time before the conversation and had not been thinking about it.

On examination by Ershowsky's counsel,[3] Freedman testified that he never

---

[3] Freedman appears to have prepared written direct testimony on his own behalf, but as he failed to file it with the bankruptcy court, the court did not consider it.

represented to Ershowsky that the company was worth $1 million, that she never asked to see the company's books, and that she knew nothing about the company's revenues, gross margin, or debt structure. He also said that he could not recall having any conversations with Ershowsky about how long he would retain the business.

The bankruptcy court found that Freedman had made false and fraudulent representations to Ershowsky in order to deceive her into remaining with Image Marketing, when he (1) represented to her that Image Marketing had a $1 million value and (2) failed to inform her of the company's long-term debt. The court further found that Ershowsky had justifiably relied upon Freedman's misrepresentations, and that his statement that the net-liabilities language in the Phantom Stock Agreement referred only to future debt was as inaccurate and misleading as his previous statements. Furthermore, Ershowsky was damaged by Freedman's false representations. Accordingly, the bankruptcy court found that Freedman was liable to Ershowsky for $166,660 under the Phantom Stock Agreement and $851.96 for the unreimbursed expenses, all of which was nondischargeable pursuant to § 523(a)(2)(A). Finally, the failure to make a matching contribution to Ershowsky's retirement account constituted fraud by a fiduciary, and, thus, Freedman owed Ershowsky an additional $4,415.16, which

7

was nondischargeable pursuant to § 523(a)(4).

Freedman appealed to the district court. He argued, in relevant part, that his representations about the value of the company were oral, not written, and, thus, could not serve as a basis for a finding of nondischargeability under § 523(a)(2)(A), (B).[4] He contended that he had repeatedly emphasized that the promise on which Ershowsky based her claim of reliance was an oral one, and, as such, was exempted from a fraud claim.

The district court held that, even when Freedman's brief was construed liberally, none of the issues he raised on appeal had been raised in the bankruptcy court. Furthermore, Freedman had not argued that any of his claims fit an exception under which the court could exercise discretion to review them, and, regardless, his claims did not fit any such exception. Accordingly, the district court dismissed Freedman's appeal.

## II.

An appeal from the bankruptcy court to the district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). "The district court in a

---

[4] Although Freedman raised additional arguments on appeal to the district court, he does not argue to us that the district court erred in finding that he had waived them. Accordingly, we do not consider them. *See Greenbriar, Ltd.*, 881 F.2d at 1573 n.6.

bankruptcy appeal, like this Court itself, functions as an appellate court in reviewing the bankruptcy court's decision." *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990). Thus, the district court is not authorized to make independent factual findings. *Id.* at 1384. As the second court of review, we review the district court's decision entirely *de novo*. *Id.* We review the bankruptcy court's factual determinations for clear error and its legal determinations *de novo*. *Id.* at 1383.

Although *pro se* pleadings are to be liberally construed, the courts may not serve as *de facto* counsel for the litigant or rewrite an otherwise deficient pleading in order to sustain an action. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), *as recognized by Randall v. Scott*, 610 F.3d 701, 705-06 (11th Cir. 2010). An issue is not preserved for appeal if it was not properly presented to the bankruptcy court. *In re Espino*, 806 F.2d 1001, 1002 (11th Cir. 1986).

In the bankruptcy court, Freedman asserted that he and Ershowsky had never discussed Image Marketing's financial condition, revenue, gross margins, expenses, or debts, and that her claim that he had made specific financial representations was entirely false. When he cross-examined her about her claim

that he had said that the company was worth approximately $1 million, he asked her to acknowledge that he had never provided documentation to support "the alleged representation," and he suggested that she only thought the company was worth $1 million because office rumors had put "the million dollar figure in [her] mind prior to that conversation." Freedman then testified that he never told Ershowsky that Image Marketing was worth $1 million and that she knew nothing about the company's revenues, gross margin, or debt structure.

Thus, Freedman's sole argument in this regard was that he never made the $1 million assertion and that Ershowsky was incorrectly blaming him for having put that figure in her mind. His questioning about the lack of written documentation related only to the absence of corroborating evidence for Ershowsky's testimony. Nothing about Freedman's questioning or pleadings would have put the bankruptcy court on notice that Freedman believed an oral representation to be legally insufficient to satisfy § 523(a)(2)(A), and the court was not required to extrapolate new issues *sua sponte* from the details of the parties' testimony. *See GJR Investments*, 132 F.3d at 1369. Accordingly, the district court did not err in holding that Freedman had waived this argument on appeal by failing to raise it in the bankruptcy court. *See Espino*, 806 F.2d at 1002.

III.

10

An argument raised for the first time on appeal will be reviewed only in special circumstances. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004). We consider five circumstances in determining whether an appellant may raise an issue for the first time on appeal: (1) whether the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) whether the appellant had an opportunity to raise the objection in the trial court; (3) whether the interest of substantial justice is at stake; (4) whether the proper resolution is beyond any doubt; and (5) whether the issue presents significant questions of general impact or great public concern. *Id.* Whether to address a pure question of law that is raised for the first time on appeal is a matter for the appellate court's discretion. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1269 n.19 (11th Cir. 2009).

Section 523(a) states that an individual debtor cannot discharge a debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
    (B) use of a statement in writing–
        (i) that is materially false;
        (ii) respecting the debtor's or an insider's financial condition;
        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably

11

relied; and
>(iv) that the debtor caused to be made or published with intent to deceive; or

(C) [certain presumptively nondischargeable consumer debts].

Thus, in order for a debt to be found nondischargeable under § 523(a)(2)(B), the money or services must have been obtained through use of a false, written statement regarding financial condition. § 523(a)(2)(B)(i)-(ii). For a debt to be found nondischargeable under § 523(a)(2)(A), though, the statute includes no written-statement requirement. § 523(a)(2)(A).

The bankruptcy court found that Freedman's debt to Ershowsky under the Phantom Stock Agreement was nondischargeable under paragraph (A), not paragraph (B). Therefore, Freedman's argument that an oral statement cannot satisfy § 523(a)(2)(B) is inapposite to the bankruptcy court's judgment, and failure to consider the issue would not result in a miscarriage of justice or implicate the interests of substantial justice. *See Access Now*, 385 F.3d at 1332. Furthermore, Freedman had ample opportunity to raise the issue in the bankruptcy court, the issue does not present significant questions of general impact or great public concern, and to the extent that the proper resolution may be beyond any doubt, the issue would be resolved in Ershowsky's favor. *See id.* The district court correctly found that no exception to the waiver doctrine applied, and it did not abuse its

discretion in declining to consider Freedman's argument. *Sinaltrainal*, 578 F.3d at 1269 n.19.

For the foregoing reasons, we affirm the district court's dismissal of Freedman's appeal.

**AFFIRMED.**