**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J. TONY SERRA; JEANINE SANTIAGO;
VICTOR J. CORDERO, and all others
similarly situated,
　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

HARLEY LAPPIN, Director of the
Bureau of Prisons; B. G. COMPTON,
Warden of Lompoc Prison;
ROBERT F. MCFADDEN, head of the
Western Regional Office of the
Bureau of Prisons,
　　　　　　*Defendants-Appellees.*

No. 08-15969

D.C. No.
3:07-CV-01589-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Submitted January 14, 2010*
San Francisco, California

Filed April 9, 2010

Before: Alex Kozinski, Chief Judge, J. Clifford Wallace and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2). Plaintiffs' motion for recon-
sideration of our order submitting the case on the briefs is denied.

5405

## COUNSEL

John Murcko and William M. Simpich, Oakland, California, and Stephen Perelson, Mill Valley, California, for the plaintiffs-appellants.

Gregory G. Katsas, Assistant Attorney General, Joseph P. Russoniello, United States Attorney, Michael S. Raab, and Alexander K. Haas, U.S. Department of Justice, Civil Division, Washington, D.C., for the defendants-appellees.

## OPINION

CLIFTON, Circuit Judge:

Current and former federal prisoners allege that the low wages they were paid for work performed in prison violated their rights under the Fifth Amendment and various sources of international law. Plaintiffs sued officials of the Bureau of Prisons for damages and injunctive and declaratory relief. We conclude that prisoners have no enforceable right to be paid for their work under the Constitution or international law, and we affirm the district court's dismissal of the action.

## I. Background

Plaintiffs Tony Serra, Jeanine Santiago, and Victor Cordero are current and former inmates of federal prisons in California, who were sentenced to terms of incarceration after being convicted of federal crimes.[1] While serving their sentences, they worked under the auspices of either Federal Prison Industries, a wholly owned government corporation known by the trade name UNICOR, *see* 18 U.S.C. §§ 4121-29; 31 U.S.C. § 9101(3)(E), or the Inmate Work and Performance

---

[1]Plaintiffs sought to represent a class of similarly situated inmate-workers, but their case was dismissed before any class was certified.

Pay Program, *see* 18 U.S.C. § 4125. Federal Prison Industries is authorized to pay its inmate-workers wages set by its Board of Directors pursuant to a delegation of authority from the Attorney General. *See* 18 U.S.C. § 4126(c)(4); 28 C.F.R. § 345.10. Under the Inmate Work and Performance Pay Program, wages are determined according to regulations promulgated by the Bureau of Prisons under the authority of the Attorney General. *See* 18 U.S.C. § 4125(d); 28 C.F.R. § 545.26.

Plaintiffs earned between $19.00 and $145.00 per month at rates as low as nineteen cents per hour. Plaintiffs contend that by paying them such low wages, Defendants Harley Lappin, Director of the Bureau of Prisons; B.G. Compton, Warden of Lompoc Prison; and Robert McFadden, Director of the Western Regional Office of the Bureau of Prisons, violated Plaintiffs' rights under the Fifth Amendment to the United States Constitution; articles 7 through 9 of the International Covenant on Civil and Political Rights ("ICCPR"), Dec. 16, 1966, 999 U.N.T.S. 171; a U.N. document entitled "Standard Minimum Rules for the Treatment of Prisoners;"[2] and the law of nations.[3]

The district court granted Defendants' motion to dismiss the action in its entirety and denied Plaintiffs' motion for leave to amend their complaint to name Defendants in their individual capacities and to state a cause of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).

---

[2]This appears to be the document that Plaintiffs persist in calling the United Nations Covenant on Prisoner Rights, ignoring the district court's observation that no such document exists.

[3]Plaintiffs also sued under the Sherman Act, 15 U.S.C. § 1, *et seq.*, and alleged a violation of the Thirteenth Amendment. We do not examine the Sherman Act claim because Plaintiffs withdrew that claim before the district court. Plaintiffs also appear not to have appealed the district court's decision that the Thirteenth Amendment does not prohibit low wages for prison work.

## II.  Discussion

We review *de novo* a dismissal for failure to state a claim and for lack of subject matter jurisdiction, and we review a denial of leave to amend for abuse of discretion. *Papa v. United States*, 281 F.3d 1004, 1008-09 (9th Cir. 2002). We conclude that neither the Fifth Amendment nor international law grants Plaintiffs a judicially enforceable right to any level of compensation for work performed in prison. We also conclude that the district court did not abuse its discretion in denying Plaintiffs' request for leave to amend.

### A.  Due Process

Plaintiffs allege that Defendants violated their due process rights under the Fifth Amendment by denying them fair wages. This claim fails because prisoners do not have a legal entitlement to payment for their work, and the Due Process Clause protects only against deprivation of existing interests in life, liberty, or property. *See Stanley v. Gonzales*, 476 F.3d 653, 660 (9th Cir. 2007) ("To assert a procedural due process claim under the Fifth Amendment, [a plaintiff] must first establish a constitutionally protected interest. [The plaintiff] must have more than a unilateral expectation of it; instead, she must have a legitimate claim of entitlement." (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70, 577 (1972))).

**[1]** The Constitution does not provide prisoners any substantive entitlement to compensation for their labor. *See Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) (holding that the state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay). Although the Constitution includes, in the Thirteenth Amendment, a general prohibition against involuntary servitude, it expressly excepts from that general prohibition forced labor "as a punishment for crime whereof the party shall have been duly convicted." U.S. Const. amend. XIII, § 1; *see Piatt*, 773

F.2d at 1035 ("The Thirteenth Amendment does not prohibit involuntary servitude as part of imprisonment for a crime.").

**[2]** Plaintiffs do not challenge their underlying convictions or allege that their sentences were cruel and unusual. A prisoner has no basis for asserting a violation of due process simply because he is made or allowed to work for low pay as punishment for a crime of which he was lawfully convicted. *See Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963) ("Where a person is duly tried, convicted, sentenced and imprisoned for crime in accordance with law, no issue of peonage or involuntary servitude arises.").

**[3]** Nor do Plaintiffs claim that they were paid less than the applicable regulations require.[4] If, without due process, they were deprived of pay to which they were entitled under the regulations, Plaintiffs might have a colorable claim. *See Vance v. Barrett*, 345 F.3d 1083, 1091 (9th Cir. 2003) (concluding that due process was violated when a prisoner's future employment was conditioned on his giving up "his statutory right to accrued net interest"). Here Plaintiffs have no constitutionally protected property interest because they lack a statutory or otherwise established right to the higher wages they demand.

## B. International Law

Plaintiffs also cite sources of international law as a basis for the right they assert to higher wages for work performed in prison. The individual documents that Plaintiffs cite, however, do not confer judicially enforceable rights, and Plaintiffs are unable to bring a claim under the law of nations.

---

[4]*See generally* 28 C.F.R. § 345.10 (providing that UNICOR payrates are set "at the discretion of Federal Prison Industries" while noting that "[t]here is no statutory requirement that inmates be paid for work"), *id.* § 545.20(b) (providing that the Warden "may . . . grant[ ] performance pay"), *id.* § 545.26 (setting the approximate percentage of Performance Pay Program work assignments allotted to each of four pay grades).

**[4]** Plaintiffs fail to state a viable claim under the International Covenant on Civil and Political Rights. "For any treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing." *Cornejo v. County of San Diego*, 504 F.3d 853, 856 (9th Cir. 2007). A treaty is self-executing when it is automatically enforceable in domestic courts without implementing legislation. *See Medellin v. Texas*, 552 U.S. 491, 504-05 & n.2 (2008); *Khan v. Holder*, 584 F.3d 773, 783 (9th Cir. 2009). The ICCPR fails to satisfy either requirement because it was ratified "on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004).[5]

**[5]** The Standard Minimum Rules for the Treatment of Prisoners ("Standard Minimum Rules")[6] similarly fail as a source of justiciable rights. This document was adopted by the First United Nations Congress on the Prevention of Crime and the Treatment of Offenders in 1955 "to set out what is generally accepted as being good principle and practice in the treatment of prisoners and the management of institutions." Standard Minimum Rules ¶ 1. It is not a treaty, and it is not binding on the United States. Even if it were a self-executing treaty, the document does not purport to serve as a source of private rights. The "Rules" themselves acknowledge that they are not all "capable of application in all places and at all times," *id.* ¶ 2, and are "not intended to preclude experiment," *id.* ¶ 3. Moreover, the specific rule identified by Plaintiffs as a source of rights declares only that "[t]here shall be a system of equitable remuneration of the work of prisoners" without specifying what wages would qualify. *Id.* ¶ 76(1).

---

[5]The Universal Declaration of Human Rights, which Plaintiffs mention in passing, suffers from the same problem as a source of justiciable rights. *See Sosa*, 542 U.S. at 734-35.

[6]United Nations, Standard Minimum Rules for the Treatment of Prisoners (1955), *available at* http://www.unhcr.org/refworld/docid/3ae6b36e8.html (last checked Feb. 12, 2010). The document was approved by the U.N. Economic and Social Council in 1977.

**[6]** Finally, Plaintiffs assert that "the customs and usages" of the nations of the world, as revealed in these and other sources, form customary international law entitling them to higher wages. This claim fails because customary international law is not a source of judicially enforceable private rights in the absence of a statute conferring jurisdiction over such claims. *See Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 n.1 (D.C. Cir. 1994) ("While it is true that 'international law is part of our law,' it is also our law that a federal court is not competent to hear a claim arising under international law absent a statute granting such jurisdiction." (citation omitted))*; see also Sosa*, 542 U.S. at 720 (" '[O]ffences against this law of nations are principally incident to whole states or nations,' and not individuals seeking relief in court." (quoting Blackstone, 4 Commentaries 68) (alteration omitted)). Plaintiffs can point to no statute that brings their claim within our purview.

**[7]** The Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, is the only possible vehicle for a claim like Plaintiffs' because no other statute recognizes a general cause of action under the law of nations.[7] The ATS grants to the district courts "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. We need not decide whether Plaintiffs' proposed minimum wage for prison labor "rest[s] on a norm of international character accepted by the civilized world and defined with a specificity comparable to

---

[7]*See Sosa*, 542 U.S. at 731 n.19 (resisting the implication "that every grant of jurisdiction to a federal court carries with it an opportunity to develop common law" and distinguishing the ATS's unique invitation to entertain "common law claims derived from the law of nations" from the strictures of § 1331 federal-question jurisdiction). If any plaintiff could bring any claim alleging a violation of the law of nations under federal-question jurisdiction, there would be no need for statutes such as the ATS and the Torture Victim Protection Act, 28 U.S.C. § 1350, note, which recognize or create limited causes of action for particular classes of plaintiffs (aliens) or particular violations (torture).

the features of [Blackstone's] 18th-century paradigms," *Sosa*, 542 U.S. at 725, because Plaintiffs have conceded that they are not aliens. The scope of the ATS is limited to suits "by an alien." 28 U.S.C. § 1350; *see In re Estate of Marcos Human Rights Litig.*, 978 F.2d 493, 499 (9th Cir. 1992) ("[The ATS] requires a claim by an alien . . . ."). The ATS admits no cause of action by non-aliens. *See Yousuf v. Samantar*, 552 F.3d 371, 375 n.1 (4th Cir. 2009) ("To the extent that any of the claims under the ATS are being asserted by plaintiffs who are American citizens, federal subject-matter jurisdiction may be lacking.").

We have allowed ourselves a few sidelong glances at the law of nations in non-ATS cases by applying the canon of statutory construction that "[w]here fairly possible, a United States statute is to be construed as not to conflict with international law or with an international agreement with the U.S." *Munoz v. Ashcroft*, 339 F.3d 950, 958 (9th Cir. 2003) (quoting Restatement (Third) of Foreign Relations Law § 114 (1987)). The canon is derived from Chief Justice Marshall's statement that

> an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains, and consequently can never be construed to violate neutral rights, or to affect neutral commerce, further than is warranted by the law of nations as understood in this country.

*Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804). The *Charming Betsy* canon is not an inviolable rule of general application, but a principle of interpretation that bears on a limited range of cases. Mindful that "Congress has the power to legislate beyond the limits posed by international law," *Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1009 (9th Cir. 2005) (internal quotation marks omitted), we do not review federal law for adherence to the law of nations with the same rigor that we apply when we must review stat-

utes for adherence to the Constitution.[8] We invoke the *Charming Betsy* canon only where conformity with the law of nations is relevant to considerations of international comity, *see Arc Ecology v. United States Dep't of the Air Force*, 411 F.3d 1092, 1102-03 (9th Cir. 2005), and only "where it is possible to do so without distorting the statute." *Cabrera-Alvarez*, 423 F.3d at 1010 (quoting *Munoz*, 339 F.3d at 958). We decline to determine whether Plaintiffs' rates of pay were in violation of the law of nations because this case meets neither condition for applying the canon.

[8] First, the purpose of the *Charming Betsy* canon is to avoid the negative "foreign policy implications" of violating the law of nations, *Weinberger v. Rossi*, 456 U.S. 25, 32 (1982),[9] and Plaintiffs have offered no reason to believe that their low wages are likely to "embroil[ ] the nation in a foreign policy dispute." *Arc Ecology*, 411 F.3d at 1102; *United States v. Corey*, 232 F.3d 1166, 1169 (9th Cir. 2000). That the courts should ever invoke the *Charming Betsy* canon in favor of United States citizens is doubtful, because a violation of the law of nations as against a United States citizen is unlikely to bring about the international discord that the canon guards against.[10] In *The Charming Betsy*, the status of the ship's

---

[8] *Compare Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803) (holding that "the Constitution, and not [an] ordinary act, must govern the case to which they both apply"), *with The Charming Betsy*, 6 U.S. at 118 (avoiding an interpretation that conflicts with the laws of nations only "if any other possible construction remains").

[9] *See also Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1114 (9th Cir. 2001) ("[W]e adhere to this principle 'out of respect for other nations.' ") (quoting *United States v. Thomas*, 893 F.2d 1066, 1069 (9th Cir. 1990)).

[10] *Cf. Arc Ecology*, 411 F.3d at 1102 ("The concerns that underlie the canon are 'obviously much less serious where the interpretation arguably violating international law is urged upon the court by the Executive Branch of our government.' When the Executive Branch is the party advancing a construction of a statute with potential foreign policy implications, we presume that 'the President has evaluated the foreign policy consequences of such an exercise of U.S. law and determined that it serves the interests of the United States.' " (quoting *United States v. Corey*, 232 F.3d 1166, 1179 (9th Cir. 2000) (citation and alteration omitted))).

owner as a Danish subject, and thus a neutral in the conflict between the United States and France, was critical to the Court's conclusion that the Non-Intercourse Act of 1800 should not be interpreted to permit the seizure and sale of his ship. 6 U.S. at 120. We have never employed the *Charming Betsy* canon in a case involving exclusively domestic parties and domestic acts,[11] nor has the Supreme Court.[12] As a general rule, domestic parties must rely on domestic law when they sue each other over domestic injuries in federal court. We need not consider whether the statutory and regulatory regime of federal inmate compensation conflicts with the law of nations because Plaintiffs, as United States citizens and residents, have not demonstrated that their low wages have any possible ramifications for this country's foreign affairs.

**[9]** Second, "[t]he *Charming Betsy* canon comes into play only where Congress's intent is ambiguous," *United States v. Yousef*, 327 F.3d 56, 92 (2d Cir. 2003), and there is nothing ambiguous about the complete discretion that Congress vested in the Attorney General with regard to inmate pay.[13] Congress is not constrained by international law as it is by the Constitution. *See United States v. Aguilar*, 883 F.2d 662, 679 (9th Cir.

---

[11]*Cf. United States v. Clark*, 435 F.3d 1100, 1106-07 (9th Cir. 2006) (applying the presumption "that Congress does not intend to violate principles of international law" to support extraterritorial jurisdiction over a United States citizen convicted of committing a crime in a foreign country).

[12]*Cf. Weinberger*, 456 U.S. at 32 (1982) (applying the *Charming Betsy* canon against United States citizen plaintiffs who had been employed on military bases abroad because their proposed interpretation of the relevant statute would have effectively repudiated Executive Agreements promising preferential hiring of local nationals).

[13]*See* 18 U.S.C. § 4125(d) ("[T]he Attorney General is authorized to provide for the payment to the inmates or their dependents such pecuniary earnings as he may deem proper, under such rules and regulations as he may prescribe."); *id.* § 4126(c) ("[Federal Prison Industries] is authorized to employ the fund, and any earnings that may accrue to the corporation . . . in paying, under rules and regulations promulgated by the Attorney General, compensation to inmates employed in any industry.").

1989) ("In enacting statutes, Congress is not bound by international law; if it chooses to do so, it may legislate contrary to the limits posed by international law." (alterations and quotation marks omitted)), *cert. denied*, 498 U.S. 1046 (1991). As a result, "we are bound by a properly enacted statute, provided it be constitutional, even if that statute violates international law." *Alvarez-Mendez v. Stock*, 941 F.2d 956, 963 (9th Cir. 1991). Because the statutes giving the Attorney General discretion over prisoner pay grades are unambiguous, there is no reason for this court to decide whether they accord with the law of nations. Thus, the district court did not err in dismissing Plaintiffs' complaint.

## C.   *Amendment of Complaint*

Plaintiffs argue that they have a right to amend their complaint to sue the defendants in their individual capacities and to assert a claim under the FTCA. The power to grant leave to amend, however, is entrusted to the discretion of the district court, which "determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009) (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). The district court did not abuse its discretion by denying Plaintiffs' motion for leave to amend, because their proposed amendments would have been futile.

Plaintiffs could not prevail against the prison officials in their individual capacities in a *Bivens* action for money damages based on the alleged inadequacy of the prisoners' earnings. *Cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (identifying an implied cause of action against individual federal officers for violation of plaintiff's Fourth Amendment rights). To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer deprived him of his constitutional rights. *See*

*Shwarz v. United States*, 234 F.3d 428, 432 (9th Cir. 2000). Here, Plaintiffs have failed to identify a constitutional violation because prisoners have no legal right to be paid for their work.

**[10]** Nor could Plaintiffs prevail on a false imprisonment claim under the FTCA, given their failure to prove or even assert that they were confined without legal authority. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 486 n.15 (9th Cir. 2007) ("False imprisonment is the nonconsensual, intentional confinement of a person, *without lawful privilege*, for an appreciable length of time, however short." (emphasis added and internal quotation marks omitted)). Amending the complaint to name Defendants in their individual capacities and to state a claim under the FTCA would therefore have been futile, and the district court did not abuse its discretion in denying leave to amend.

## III.   Conclusion

**[11]** Plaintiffs have stated no constitutional claim upon which relief can be granted and no international law claim over which federal courts have jurisdiction. Plaintiffs' proposed amendments could have fared no better. The action was properly dismissed without leave to amend.

**AFFIRMED.**