(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MOHAMAD, INDIVIDUALLY AND FOR ESTATE OF RAHIM, DECEASED, ET AL. *v.* PALESTINIAN AUTHORITY ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 11–88. Argued February 28, 2012—Decided April 18, 2012

While visiting the West Bank, Azzam Rahim, a naturalized United States citizen, allegedly was arrested by Palestinian Authority intelligence officers, imprisoned, tortured, and ultimately killed. Rahim's relatives, petitioners here, sued the Palestinian Authority and the Palestine Liberation Organization under the Torture Victim Protection Act of 1991 (TVPA), which authorizes a cause of action against "[a]n individual" for acts of torture and extrajudicial killing committed under authority or color of law of any foreign nation. 106 Stat. 73, note following 28 U. S. C. §1350. The District Court dismissed the suit, concluding, as relevant here, that the TVPA's authorization of suit against "[a]n individual" extended liability only to natural persons. The United States Court of Appeals for the District of Columbia Circuit affirmed.

*Held*: As used in the TVPA, the term "individual" encompasses only natural persons. Consequently, the Act does not impose liability against organizations. Pp. 2–11.

(a) The ordinary, everyday meaning of "individual" refers to a human being, not an organization, and Congress in the normal course does not employ the word any differently. The Dictionary Act defines "person" to include certain artificial entities "as well as individuals," 1 U. S. C. §1, thereby marking "individual" as distinct from artificial entities. Federal statutes routinely distinguish between an "individual" and an organizational entity. See, *e.g.*, 7 U. S. C. §§92(k), 511. And the very Congress that passed the TVPA defined "person" in a separate Act to include "any individual or entity." 18 U. S. C.

§2331(3).  Pp. 2–5.

(b) Before a word will be assumed to have a meaning broader than or different from its ordinary meaning, Congress must give some indication that it intended such a result.  There are no such indications in the TVPA.  To the contrary, the statutory context confirms that Congress in the Act created a cause of action against natural persons alone.  The Act's liability provision uses the word "individual" five times in the same sentence: once to refer to the perpetrator and four times to refer to the victim.  See TVPA §2(a).  Since only a natural person can be a victim of torture or extrajudicial killing, it is difficult to conclude that Congress used "individual" four times in the same sentence to refer to a natural person and once to refer to a natural person *and* any nonsovereign organization.  In addition, the TVPA holds perpetrators liable for extrajudicial killing to "any person who may be a claimant in an action for wrongful death."  See TVPA §2(a)(2).  "Persons" often has a broader meaning in the law than "individual," and frequently includes non-natural persons.  Construing "individual" in the Act to encompass solely natural persons credits Congress' use of disparate terms.  Pp. 5–6.

(c) Petitioners' counterarguments are unpersuasive.  Pp. 6–11.

(1) Petitioners dispute that the plain text of the TVPA requires this Court's result.  First, they rely on definitions that frame "individual" in nonhuman terms, emphasizing the idea of "oneness," but these definitions make for an awkward fit in the context of the TVPA.  Next they claim that federal tort statutes uniformly provide for liability against organizations, a convention they maintain is common to the legal systems of other nations.  But while "Congress is understood to legislate against a background of common-law adjudicatory principles," *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108, Congress plainly evinced its intent in the TVPA not to subject organizations to liability.  Petitioners next argue that the TVPA's scope of liability should be construed to conform with other federal statutes they claim provide civil remedies to victims of torture or extrajudicial killing.  But none of the statutes petitioners cite employs the term "individual," as the TVPA, to describe the covered defendant.  Finally, although petitioners rightly note that the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing, it does not follow that the Act embraces liability against nonsovereign organizations.  Pp. 6–8.

(2) Petitioners also contend that legislative history supports their broad reading of "individual," but "reliance on legislative history is unnecessary in light of the statute's unambiguous language." *Milavetz, Gallop & Milavetz, P. A.* v. *United States*, 559 U. S. ___, ___.  In any event, the history supports this Court's interpretation.  Pp. 8–10.

   (3) Finally, petitioners argue that precluding organizational lia-
bility may foreclose effective remedies for victims and their relatives.
This purposive argument simply cannot overcome the force of the
plain text.  Moreover, Congress appeared well aware of the limited
nature of the cause of action it established in the TVPA.  Pp. 10–11.

634 F. 3d 604, affirmed.

   SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, THOMAS, GINSBURG, BREYER, ALITO, and KAGAN,
JJ., joined, and in which SCALIA, J., joined except as to Part III–B.
BREYER, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–88

_____

ASID MOHAMAD, INDIVIDUALLY AND FOR THE ESTATE OF AZZAM RAHIM, DECEASED, ET AL., PETITIONERS *v.* PALESTINIAN AUTHORITY ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[April 18, 2012]

JUSTICE SOTOMAYOR delivered the opinion of the Court.*

The Torture Victim Protection Act of 1991 (TVPA or Act), 106 Stat. 73, note following 28 U. S. C. §1350, authorizes a cause of action against "[a]n individual" for acts of torture and extrajudicial killing committed under authority or color of law of any foreign nation. We hold that the term "individual" as used in the Act encompasses only natural persons. Consequently, the Act does not impose liability against organizations.

I

Because this case arises from a motion to dismiss, we accept as true the allegations of the complaint. *Ashcroft* v. *al-Kidd*, 563 U. S. ___, ___ (2011) (slip op., at 1). Petitioners are the relatives of Azzam Rahim, who immigrated to the United States in the 1970's and became a naturalized citizen. In 1995, while on a visit to the West Bank, Rahim was arrested by Palestinian Authority intelligence officers. He was taken to a prison in Jericho, where he was impris-

_____

*JUSTICE SCALIA joins this opinion except as to Part III–B.

oned, tortured, and ultimately killed. The following year, the U. S. Department of State issued a report concluding that Rahim "died in the custody of [Palestinian Authority] intelligence officers in Jericho." Dept. of State, Occupied Territories Human Rights Practices, 1995 (Mar. 1996).

In 2005, petitioners filed this action against respondents, the Palestinian Authority and the Palestine Liberation Organization, asserting, *inter alia*, claims of torture and extrajudicial killing under the TVPA. The District Court granted respondents' motion to dismiss, concluding, as relevant, that the Act's authorization of suit against "[a]n individual" extended liability only to natural persons. *Mohamad* v. *Rajoub*, 664 F. Supp. 2d 20, 22 (DC 2009). The United States Court of Appeals for the District of Columbia Circuit affirmed on the same ground. See *Mohamad* v. *Rajoub*, 634 F. 3d 604, 608 (2011) ("Congress used the word 'individual' to denote only natural persons").[1] We granted certiorari, 565 U. S. ___ (2011), to resolve a split among the Circuits with respect to whether the TVPA authorizes actions against defendants that are not natural persons,[2] and now affirm.

## II

The TVPA imposes liability on individuals for certain acts of torture and extrajudicial killing. The Act provides:

> "An individual who, under actual or apparent authority, or color of law, of any foreign nation—

---

[1] Respondents also argued before the District Court that the TVPA's requirement that acts be committed under authority or color of law of a foreign nation was not met. Neither the District Court nor Court of Appeals addressed the argument, and we offer no opinion on its merits.

[2] Compare *Aziz* v. *Alcolac, Inc.*, 658 F. 3d 388 (CA4 2011) (TVPA excludes corporate defendants from liability); *Mohamad* v. *Rajoub*, 634 F. 3d 604 (CADC 2011) (TVPA liability limited to natural persons); *Bowoto* v. *Chevron Corp.*, 621 F. 3d 1116 (CA9 2010) (same as *Aziz*), with *Sinaltrainal* v. *Coca Cola Co.*, 578 F. 3d 1252, 1264, n. 13 (CA11 2009) (TVPA liability extends to corporate defendants).

"(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or

"(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death." §2(a).

The Act defines "torture" and "extrajudicial killing," §3, and imposes a statute of limitations and an exhaustion requirement, §§2(b), (c). It does not define "individual."

Petitioners concede that foreign states may not be sued under the Act—namely, that the Act does not create an exception to the Foreign Sovereign Immunities Act of 1976, 28 U. S. C. §1602 *et seq.*, which renders foreign sovereigns largely immune from suits in U. S. courts. They argue, however, that the TVPA does not similarly restrict liability against other juridical entities. In petitioners' view, by permitting suit against "[a]n individual," the TVPA contemplates liability against natural persons *and* nonsovereign organizations (a category that, petitioners assert, includes respondents). We decline to read "individual" so unnaturally. The ordinary meaning of the word, fortified by its statutory context, persuades us that the Act authorizes suit against natural persons alone.

A

Because the TVPA does not define the term "individual," we look first to the word's ordinary meaning. See *FCC* v. *AT&T Inc.*, 562 U. S. ___, ___ (2011) (slip op., at 5) ("When a statute does not define a term, we typically give the phrase its ordinary meaning" (internal quotation marks omitted)). As a noun, "individual" ordinarily means "[a] human being, a person." 7 Oxford English Dictionary 880 (2d ed. 1989); see also, *e.g.,* Random House Dictionary of the English Language 974 (2d ed. 1987) ("a person"); Webster's Third New International Dictionary 1152 (1986)

("a particular person") (hereinafter Webster's). After all, that is how we use the word in everyday parlance. We say "the individual went to the store," "the individual left the room," and "the individual took the car," each time referring unmistakably to a natural person. And no one, we hazard to guess, refers in normal parlance to an organization as an "individual." Evidencing that common usage, this Court routinely uses "individual" to denote a natural person, and in particular to distinguish between a natural person and a corporation. See, *e.g., Goodyear Dunlop Tires Operations, S. A.* v. *Brown*, 564 U. S. __, __ (2011) (slip op., at 7) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home").

Congress does not, in the ordinary course, employ the word any differently. The Dictionary Act instructs that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the wor[d] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, *and* joint stock companies, *as well as* individuals." 1 U. S. C. §1 (emphasis added). With the phrase "as well as," the definition marks "individual" as distinct from the list of artificial entities that precedes it.

In a like manner, federal statutes routinely distinguish between an "individual" and an organizational entity of some kind. See, *e.g.,* 7 U. S. C. §92(k) ("'Person' includes partnerships, associations, and corporations, as well as individuals"); §511 (same); 15 U. S. C. §717a ("'Person' includes an individual or a corporation"); 16 U. S. C. §796 ("'[P]erson' means an individual or a corporation"); 8 U. S. C. §1101(b)(3) ("'[P]erson' means an individual or an organization"). Indeed, the very same Congress that enacted the TVPA also established a cause of action for U. S. nationals injured "by reason of an act of interna-

tional terrorism" and defined "person" as it appears in the statute to include "any individual *or entity* capable of holding a legal or beneficial interest in property." Federal Courts Administration Act of 1992, 18 U. S. C. §§2333(a), 2331(3) (emphasis added)).

### B

This is not to say that the word "individual" invariably means "natural person" when used in a statute. Congress remains free, as always, to give the word a broader or different meaning. But before we will assume it has done so, there must be *some* indication Congress intended such a result. Perhaps it is the rare statute (petitioners point to only one such example, located in the Internal Revenue Code) in which Congress expressly defines "individual" to include corporate entities. See 26 U. S. C. §542(a)(2). Or perhaps, as was the case in *Clinton* v. *City of New York*, 524 U. S. 417, 429 (1998), the statutory context makes that intention clear, because any other reading of "individual" would lead to an "'absurd'" result Congress could not plausibly have intended.

There are no such indications in the TVPA. As noted, the Act does not define "individual," much less do so in a manner that extends the term beyond its ordinary usage. And the statutory context strengthens—not undermines— the conclusion that Congress intended to create a cause of action against natural persons alone. The Act's liability provision uses the word "individual" five times in the same sentence: once to refer to the perpetrator (*i.e.,* the defend- ant) and four times to refer to the victim. See §2(a). Only a natural person can be a victim of torture or extrajudicial killing. "Since there is a presumption that a given term is used to mean the same thing throughout a statute, a presumption surely at its most vigorous when a term is repeated within a given sentence," *Brown* v. *Gardner*, 513 U. S. 115, 118 (1994) (citation omitted), it is difficult in-

deed to conclude that Congress employed the term "individual" four times in one sentence to refer to a natural person and once to refer to a natural person *and* any nonsovereign organization. See also §3(b)(1) (using term "individual" six times in referring to victims of torture).

It is also revealing that the Act holds perpetrators liable for extrajudicial killing to "any *person* who may be a claimant in an action for wrongful death." §2(a)(2) (emphasis added). "Person," we have recognized, often has a broader meaning in the law than "individual," see *Clinton*, 524 U. S., at 428, n. 13, and frequently includes nonnatural persons, see, *e.g.*, 1 U. S. C. §1. We generally seek to respect Congress' decision to use different terms to describe different categories of people or things. See *Sosa* v. *Alvarez-Machain*, 542 U. S. 692, 711, n. 9 (2004). Our construction of "individual" to encompass solely natural persons credits Congress' use of the disparate terms; petitioners' construction does not.[3]

In sum, the text of the statute persuades us that the Act authorizes liability solely against natural persons.

### III

Petitioners' counterarguments are unpersuasive.

### A

Petitioners first dispute that the plain text of the TVPA requires today's result. Although they concede that an ordinary meaning of "individual" is "human being," petitioners point to definitions of "individual" that "frame the term . . . in distinctly non-human terms, instead placing their emphases on the *oneness* of something." Brief for

---

[3] The parties debate whether estates, or other nonnatural persons, in fact may be claimants in a wrongful-death action. We think the debate largely immaterial. Regardless of whether jurisdictions today allow for such actions, Congress' use of the broader term evidences an intent to accommodate that possibility.

Petitioners 18 (citing, *e.g.,* Webster's 1152 (defining "individual" as "a single or particular being or thing or group of being or things")). Those definitions, however, do not account even for petitioners' preferred interpretation of "individual" in the Act, for foreign states—which petitioners concede are not liable under the Act—do not differ from nonsovereign organizations in their degree of "oneness." Moreover, "[w]ords that can have more than one meaning are given content . . . by their surroundings," *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 466 (2001), and for the reasons explained *supra*, petitioners' definition makes for an awkward fit in the context of the TVPA.

Petitioners next claim that federal tort statutes uniformly provide for liability against organizations, a convention they maintain is common to the legal systems of other nations. We are not convinced, however, that any such "domestic and international presumption of organizational liability" in tort actions overcomes the ordinary meaning of "individual." Brief for Petitioners 16. It is true that "Congress is understood to legislate against a background of common-law adjudicatory principles." *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (1991). But Congress plainly can override those principles, see, *e.g., id.*, at 108–109, and, as explained *supra*, the TVPA's text evinces a clear intent not to subject non-sovereign organizations to liability.[4]

————————

[4] Petitioners' separate contention that the TVPA must be construed in light of international agreements prohibiting torture and extrajudicial killing fails for similar reasons. Whatever the scope of those agreements, the TVPA does not define "individual" by reference to them, and principles they elucidate cannot overcome the statute's text. The same is true of petitioners' suggestion that Congress in the TVPA imported a "specialized usage" of the word "individual" in international law. Brief for Petitioners 6. There is no indication in the text of the statute or legislative history that Congress knew of any such specialized usage of the term, much less intended to import it into the Act.

We also decline petitioners' suggestion to construe the TVPA's scope of liability to conform with other federal statutes that petitioners contend provide civil remedies to victims of torture or extrajudicial killing. None of the three statutes petitioners identify employs the term "individual" to describe the covered defendant, and so none assists in the interpretive task we face today. See 42 U. S. C. §1983; 28 U. S. C. §§1603(a), 1605A(c) (2006 ed., Supp. IV); 18 U. S. C. §§2333, 2334(a)–(b), 2337. The same is true of the Alien Tort Statute, 28 U. S. C. §1350, so it offers no comparative value here regardless of whether corporate entities can be held liable in a federal common-law action brought under that statute. Compare *Doe* v. *Exxon Mobil Corp.*, 654 F. 3d 11 (CADC 2011), with *Kiobel* v. *Royal Dutch Petroleum Co.*, 621 F. 3d 111 (CA2 2010), cert. granted, 565 U. S. ___ (2011). Finally, although petitioners rightly note that the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing, see, *e.g., Chavez* v. *Carranza*, 559 F. 3d 486 (CA6 2009), it does not follow (as petitioners argue) that the Act embraces liability against nonsovereign organizations. An officer who gives an order to torture or kill is an "individual" in that word's ordinary usage; an organization is not.

B

Petitioners also contend that legislative history supports their broad reading of "individual." But "reliance on legislative history is unnecessary in light of the statute's unambiguous language." *Milavetz, Gallop & Milavetz, P. A.* v. *United States*, 559 U. S. ___, ___, n. 3 (2010) (slip op., at 6, n. 3). In any event, the excerpts petitioners cite do not help their cause. Petitioners note that the Senate Report states that "[t]he legislation uses the term 'individual' to make crystal clear that foreign states or their entities cannot be sued under this bill under any circumstances."

S. Rep. No. 102–249, p. 7 (1991) (S. Rep.); see also H. R. Rep. No. 102–367, pt. 1, p. 4 (1991) (H. R. Rep.) ("Only 'individuals,' not foreign states, can be sued"). Yet that statement, while clarifying that the Act does not encompass liability against foreign states, says nothing about liability against nonsovereign organizations. The other excerpts petitioners cite likewise are not probative of the meaning of "individual," for they signal only that the Act does not impose liability on perpetrators who act without authority or color of law of a foreign state. See, *e.g.,* H. R. Rep., at 5 ("The bill does not attempt to deal with torture or killing by purely private groups"); S. Rep., at 8 (The bill "does not cover purely private criminal acts by individuals or nongovernmental organizations").

Indeed, although we need not rely on legislative history given the text's clarity, we note that the history only supports our interpretation of "individual." The version of the TVPA that was introduced in the 100th Congress established liability against a "person." Hearing and Markup on H. R. 1417 before the House Committee on Foreign Affairs and Its Subcommittee on Human Rights and International Organizations, 100th Cong., 2d Sess., 82 (1988). During the markup session of the House Foreign Affairs Committee, one of the bill's sponsors proposed an amendment "to make it clear we are applying it to individuals and not to corporations." *Id.,* at 81, 87. Counsel explained that it was a "fairly simple" matter "of changing the word 'person' to 'individuals' in several places in the bill." *Id.,* at 87–88. The amendment was unanimously adopted, and the version of the bill reported out of Committee reflected the change. *Id.,* at 88; H. R. Rep. No. 693, pt. 1, p. 1 (1988). A materially identical version of the bill was enacted as the TVPA by the 102d Congress. Although we are cognizant of the limitations of this drafting history, cf. *Exxon Mobil Corp.* v. *Allapattah Services, Inc.*, 545 U. S. 546, 568 (2005), we nevertheless find it telling that

the sole explanation for substituting "individual" for "person" confirms what we have concluded from the text alone.

C

Petitioners' final argument is that the Act would be rendered toothless by a construction of "individual" that limits liability to natural persons. They contend that precluding organizational liability may foreclose effective remedies for victims and their relatives for any number of reasons. Victims may be unable to identify the men and women who subjected them to torture, all the while knowing the organization for whom they work. Personal jurisdiction may be more easily established over corporate than human beings. And natural persons may be more likely than organizations to be judgment proof. Indeed, we are told that only two TVPA plaintiffs have been able to recover successfully against a natural person—one only after the defendant won the state lottery. See *Jean* v. *Dorelien*, 431 F. 3d 776, 778 (CA11 2005).

We acknowledge petitioners' concerns about the limitations on recovery. But they are ones that Congress imposed and that we must respect. "[N]o legislation pursues its purposes at all costs," *Rodriguez* v. *United States*, 480 U. S. 522, 525–526 (1987) *(per curiam)*, and petitioners' purposive argument simply cannot overcome the force of the plain text. We add only that Congress appeared well aware of the limited nature of the cause of action it established in the Act. See, *e.g.*, 138 Cong. Rec. 4177 (1992) (remarks of Sen. Simpson) (noting that "as a practical matter, this legislation will result in a very small number of cases"); 137 Cong. Rec. 2671 (1991) (remarks of Sen. Specter) ("Let me emphasize that the bill is a limited measure. It is estimated that only a few of these lawsuits will ever be brought").

Opinion of the Court

\*     \*     \*

The text of the TVPA convinces us that Congress did not extend liability to organizations, sovereign or not. There are no doubt valid arguments for such an extension. But Congress has seen fit to proceed in more modest steps in the Act, and it is not the province of this Branch to do otherwise. The judgment of the United States Court of Appeals for the District of Columbia Circuit is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 11–88

ASID MOHAMAD, INDIVIDUALLY AND FOR THE ESTATE OF AZZAM RAHIM, DECEASED, ET AL., PETITIONERS *v.* PALESTINIAN AUTHORITY ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[April 18, 2012]

JUSTICE BREYER, concurring.

I join the Court's opinion with one qualification. The word "individual" is open to multiple interpretations, permitting it, linguistically speaking, to include natural persons, corporations, and other entities. Thus, I do not believe that word alone is sufficient to decide this case.

The legislative history of the statute, however, makes up for whatever interpretive inadequacies remain after considering language alone. See, *e.g., ante,* at 9 (describing markup session in which one of the bill's sponsors proposed an amendment containing the word "individual" to "make it clear" that the statute applied to "individuals and not to corporations"); Hearing on S. 1629 et al. before the Subcommittee on Immigration and Refugee Affairs of the Senate Committee on the Judiciary, 101st Cong., 2d Sess., 65 (1990) (witness explaining to committee that there would be a "problem" with suing an "independent entity or a series of entities that are not governments," such as the Palestine Liberation Organization); *id.,* at 75 (allaying concerns that there will be a flood of lawsuits "because of the requirement [in the statute] that an individual has to identify his or her precise torture[r] and they have to be both in the United States"); see also *ante,* at 8–9 (making clear that petitioners' citations to the legislative

history "do not help their cause"). After examining the history in detail, and considering it along with the reasons that the Court provides, I join the Court's judgment and opinion.